Michael A. Pope, ISBN 6267
THE HOPP LAW FIRM, LLC
250 South 5th Street, 2nd Floor
Boise, Idaho 83702
Ph: (800) 220-4698

NO. _____
A.M. _____ FILED _____ P.M. 1:30

OCT 2 6 2009

J. DAVID NAVARRO, Clerk
By PATRICIA A DWONCH
DEPUTY

Attorneys for Plaintiff Commonwealth Land
 Title Insurance Company

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF

THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Nebraska Corporation, Subrogee of KM Construction Lending, LLC, Subrogor,<br><br>            Plaintiff,<br><br>v.<br><br>JON NISHIKAWA, an Individual; CAMERON BALDWIN, an Individual; IDAHO APPRAISAL COMPANY, an Idaho Corporation; KEITH C. KLAHR, an Individual; and TITLEONE CORPORATION, an Idaho Corporation,<br>            Defendants. | Case No. CV OC 0920411<br><br>**COMPLAINT**<br><br>Fee Category: A<br>Fee: $88.00 |

COMES NOW Plaintiff Commonwealth Land Title Insurance Company, by and through its attorneys of record, The Hopp Law Firm, LLC, as and for a cause of action against the above Defendants, complains and alleges as follows:

COMPLAINT - Page 1 of 12

3874.005



## PARTIES, JURISDICTION, AND VENUE

1. The Plaintiff, Commonwealth Land Title Insurance Company (hereinafter "Commonwealth"), is and was at all times relevant herein duly authorized to do business in the State of Idaho. Plaintiff is engaged in the business of issuing title insurance and related activities.

2. Defendants Jon Nishikawa (hereinafter "Nishikawa") and Cameron Baldwin (hereinafter "Baldwin") are, upon information and belief, residents of the State of Idaho. At all times relevant herein, these Defendants were employees of or subcontractors to Defendant Idaho Appraisal Company.

3. Defendant Idaho Appraisal Company is and was at all times relevant herein an Idaho corporation engaged in the business of real estate appraisal.

4. Defendant Keith C. Klahr (hereinafter "Klahr") is and was at all times relevant herein a resident of Ada County, Idaho.

5. Defendant TitleOne Corporation (hereinafter "TitleOne") is and was at all relevant times herein a corporation established under the laws of the State of Idaho and authorized to do business in the State of Idaho.

6. Jurisdiction is proper in Ada County. IDAHO CODE § 5-514.

7. Venue is proper in Ada County pursuant to IDAHO CODE § 5-404 in that at least one (1) of the Defendants is a resident of Ada County.

## FACTS AND ALLEGATIONS

8. On or about February 25, 1972, the Nampa-Meridian Irrigation District (hereinafter "NMID") caused to be filed with the Ada County Recorder's Office an instrument entitled "Rights of Way Descriptions for Nampa-Meridian Irrigation District", document number

797771 ("Instrument"). The Instrument identifies canal and lateral centerlines in Ada County from the Boise River Diversion Dam to Locust Grove Road, as well as rights of way up to fifteen (15) feet on either side of these centerlines.

9. As part of the "Description of the Right of Way for the Tuttle Lateral", pp. 11 1892-111 1894 of the Instrument, an above-ground irrigation ditch is identified which goes over three (3) parcels of land situated on Everett Street in Boise, Ada County, Idaho: parcel numbers R5130003942, R5130003947, and R5130003951; with the legal description of Lots 7, 8, and 9, Block 19 Lambertons Addition, filed in Book 6 of Plats at page 265, official records of Ada County, Idaho. This irrigation ditch is visible from Everett Street as it crosses all three (3) parcels.

10. On or about June 12, 2007, at the request of Pro Mortgage Group, the above parcels were appraised by Defendant Nishikawa. The appraisals were conducted and subsequent Uniform Residential Appraisal Reports were prepared by Defendant Nishikawa.

11. Said appraisals were prepared for the benefit and use of Pro Mortgage Group, the assignor and predecessor to KM Construction Lending, LLC (hereinafter referred to as "KM"), a mortgage lender; and for the benefit and use of Plaintiff, for the purpose of establishing the value of the three said properties to support three (3) construction loans to be made to Defendant Klahr to construct a home on each of the subject properties, and to support the amount of title insurance insuring the construction deeds of trust which would secure those loans.

12. As part of each of the above parcels' appraisal report, Defendant Nishikawa stated that "No visible easements detrimental to market value noted".

13. In the appraisal reports each of the above parcels received an appraised value of $197,000.00.

14. Defendant Baldwin, as a supervisory appraiser to Defendant Nishikawa, approved and concurred with said appraisals. Both Defendants signed the appraisal reports.

15. In justifiable reliance of the appraisals, subrogor KM agreed to lend Defendant Klahr monies for the purchase of the above parcels and the construction of residences on those parcels. These lending agreements were memorialized by Construction Loan Agreements, Promissory Notes, and Construction Deeds of Trust (hereinafter collectively "Loan Agreements"). The Construction Deeds of Trust were recorded with the Ada County Recorder's Office on or about September 28, 2007, document numbers 107135770 (Lot 7), 107135767 (Lot 8), and 107135773 (Lot 9).

16. In reliance of the appraisals, on or about September 28, 2007, Plaintiff Commonwealth, issued three separate Loan Policies of Title Insurance to subrogor KM on the above parcels, policy numbers K57-0133018 (Lot 7), K57-0133061 (Lot 8), and K57-0133060 (Lot 9), each naming KM as its insured, insuring the three separate deeds of trust granted by Defendant Klahr for the benefit of KM.

17. In connection with and as a requirement to the Loan Agreements, the Deeds of Trust granted by Klahr contained certain representations and warranties.

18. At some time thereafter, subrogor KM made loan draws to Defendant Klahr.

19. At some time after the issuance of the loan monies to Defendant Klahr and the issuance of title insurance to subrogor KM for the above parcels it was determined that the existence of the NMID easement over the parcels would make construction of residences on the parcels impossible.

20. On or about May 30, 2008, claims were made by subrogor KM against Plaintiff Commonwealth under each of the three title insurance policies based upon the NMID easement.

21. According to subrogor KM's claims, the NMID easement renders the above parcels unsuitable for use for residential construction, and diminishes their respective values to virtually nil.

22. Plaintiff Commonwealth provided insurance coverage to subrogor KM under the above policies of title insurance. Plaintiff Commonwealth paid pursuant to those policies the following amounts: $68,672.00 for Lot 7; $69,039.00 for Lot 8; and $69,051.09 for Lot 9, for a total amount of **$206,762.09**. Plaintiff Commonwealth, by its payments to subrogor KM on these claims, is now subrogated to collect these sums from any and all Defendants as alleged below for those actions which led to Commonwealth's payments under those policies.

23. Defendant Klahr is not using the monies loaned to him by subrogor KM for construction of residences on the above properties, as required by the loan agreements.

### FIRST CAUSE OF ACTION
### NEGLIGENCE AGAINST DEFENDANTS
### JON NISHIKAWA AND CAMERON BALDWIN

24. Defendants Nishikawa and Baldwin had a duty to conduct an appraisal of the above parcels in accordance with the accepted standards for appraisers, namely, the Uniform Standards of Professional Appraisal Practice, and to discover any condition of the land which may affect its value.

25. Defendants Nishikawa and Baldwin breached this duty when they failed to discover the NMID irrigation easement when the irrigation ditch is visible on the parcels, failed to

disclose the existence of the irrigation ditch and the easement in the appraisal reports, and to report that the properties may have little or no value as residential construction sites.

26. But for these Defendants' negligence, Plaintiff Commonwealth would not have issued the subject title insurance policies and subrogor KM would not have made the subject construction loans to Defendant Klahr. Further, the claims made by subrogor KM would not have been made.

27. Plaintiff Commonwealth provided insurance coverage to subrogor KM under the above policies of title insurance. Plaintiff Commonwealth paid pursuant to those policies the following amounts: $68,672.00 for Lot 7; $69,039.00 for Lot 8; and $69,051.09 for Lot 9, for a total amount of **$206,762.09**. Plaintiff Commonwealth, by its payments to subrogor KM on these claims, is now subrogated to collect these sums from any and all Defendants as alleged for those actions which led to Commonwealth's payments under those policies.

## SECOND CAUSE OF ACTION
### *RESPONDEAT SUPERIOR* AGAINST DEFENDANT IDAHO APPRAISAL COMPANY

28. At all times relevant herein, Defendants Nishikawa and Baldwin were employees of or subcontractors to Defendant Idaho Appraisal Company.

29. The June 12, 2007, appraisals and the subsequently-drafted appraisal reports were conducted within the scope and course of Defendants Nishikawa's and Baldwin's employment with Defendant Idaho Appraisal Company.

30. Under the doctrine of *respondeat superior*, Defendant Idaho Appraisal Company is liable for the negligence of Defendants Nishikawa and Baldwin and the associated damages to Plaintiff Commonwealth caused by these Defendants' negligence.

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT AGAINST DEFENDANT
## IDAHO APPRAISAL COMPANY

31. At all times relevant herein, there was a valid contract between Pro Mortgage Group, the assignor and predecessor of the appraisal reports to subrogor KM, and Defendant Idaho Appraisal Company to have the subject parcels appraised to develop an opinion of their market value.

32. Defendant Idaho Appraisal Company breached this contract when its employees or subcontractors Jon Nishikawa and Cameron Baldwin failed to discover the NMID irrigation easement when the irrigation ditch is visible on the parcels, failed to disclose the existence of the irrigation ditch and the NMID irrigation easement in the appraisal reports, and to report that the properties may have little or no value as residential construction sites.

33. But for Defendant Idaho Appraisal Company's breach of this contract, Plaintiff Commonwealth would not have issued the subject title insurance policies and subrogor KM would not have made the subject construction loans to Defendant Klahr. Further, the claims made by subrogor KM would not have been made.

34. Plaintiff Commonwealth provided insurance coverage to subrogor KM under the above policies of title insurance. Plaintiff Commonwealth paid pursuant to those policies the following amounts: $68,672.00 for Lot 7; $69,039.00 for Lot 8; and $69,051.09 for Lot 9, for a total amount of **$206,762.09**. Plaintiff Commonwealth, by its payments to subrogor KM on these claims, is now subrogated to collect these sums from any and all Defendants as alleged for those actions which led to Commonwealth's payments under those policies.

## FOURTH CAUSE OF ACTION
### BREACH OF AGENCY AGREEMENT AGAINST DEFENDANT TITLEONE CORPORATION

35. At all times relevant herein, Defendant TitleOne was an authorized agent of Plaintiff Commonwealth. This agency came as a result of a valid agreement between Plaintiff Commonwealth and Defendant TitleOne.

36. Defendant TitleOne issued the above policies of title insurance to subrogor KM for the subject parcels, insuring the three separate deeds of trust granted by Keith C. Klahr for the benefit of KM.

37. Defendant TitleOne breached its agency agreement with Plaintiff Commonwealth when it failed to identify the NMID irrigation easement as an encumbrance on the subject properties and issued insurance coverage well in excess of the actual value of the parcels with the easement.

38. Because of this breach of the agency agreement, Plaintiff Commonwealth paid the claims made by subrogor KM under these policies of title insurance after the subject parcels could not have residences built on them. Plaintiff Commonwealth paid pursuant to those policies the following amounts: $68,672.00 for Lot 7; $69,039.00 for Lot 8; and $69,051.09 for Lot 9, for a total amount of **$206,762.09**. Plaintiff Commonwealth, by its payments to subrogor KM on these claims, is now subrogated to collect these sums from any and all Defendants as alleged for those actions which led to Commonwealth's payments under those policies.

## FIFTH CAUSE OF ACTION
## NEGLIGENCE AGAINST DEFENDANT
## TITLEONE CORPORATION

39. At all times relevant herein, Defendant TitleOne had a duty to identify all easements and other encumbrances which would affect the value of the subject parcels and/or the amount of insurance coverage Plaintiff Commonwealth would want to extend on those parcels.

40. Defendant TitleOne breached this duty when it failed to identify the NMID irrigation easement as an encumbrance on the subject properties and issued insurance coverage well in excess of the actual value of the parcels with this easement.

41. Because of this breach, Plaintiff Commonwealth paid the claims made by subrogor KM under these policies of title insurance after the subject parcels could not have residences built on them. Plaintiff Commonwealth paid pursuant to those policies the following amounts: $68,672.00 for Lot 7; $69,039.00 for Lot 8; and $69,051.09 for Lot 9, for a total amount of **$206,762.09**. Plaintiff Commonwealth, by its payments to subrogor KM on these claims, is now subrogated to collect these sums from any and all Defendants as alleged for those actions which led to Commonwealth's payments under those policies.

## SIXTH CAUSE OF ACTION
## BREACH OF LOAN AGREEMENTS AGAINST DEFENDANT
## KEITH C. KLAHR

42. In each of the above Construction Deeds of Trust, Defendant Klahr warranted that he, as Grantor, "(a) [ ] holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any other title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender."

43. There are no liens or encumbrances set forth in the Real Property description within these Deeds of Trust, especially the NMID irrigation easement.

44. These Construction Deeds of Trust secured the Promissory Notes lending construction monies to Defendant Klahr.

45. Defendant Klahr breached these Loan Agreements by not disclosing the NMID irrigation easement which reduced the actual value of the parcels on which Defendant Klahr intended to build residences and which made said construction impossible.

46. Because of this breach, Plaintiff Commonwealth insured the parcels for more than they were worth. Additionally, subrogor KM loaned construction monies to Defendant Klahr for residences that could not be built.

47. Because of this breach, Plaintiff Commonwealth paid the claims made by subrogor KM under these policies of title insurance after the subject parcels could not have residences built on them. Plaintiff Commonwealth paid pursuant to those policies the following amounts: $68,672.00 for Lot 7; $69,039.00 for Lot 8; and $69,051.09 for Lot 9, for a total amount of **$206,762.09**. Plaintiff Commonwealth, by its payments to subrogor KM on these claims, is now subrogated to collect these sums from any and all Defendants as alleged for those actions which led to Commonwealth's payments under those policies.

### SEVENTH CAUSE OF ACTION
### BREACH OF LOAN AGREEMENTS AGAINST DEFENDANT KEITH C. KLAHR

48. In each of the above Construction Loan Agreements, Defendant Klahr promised that he would use the loan monies only to construct residences on the above properties.

49. There is no ongoing construction or any residence on any of the above properties. It is unknown how Defendant Klahr has used the monies

50. Defendant Klahr breached these Loan Agreements by not utilizing the advanced monies from the loans issued by subrogor KM to construct residences on the above properties.

51. Because of this breach, Plaintiff Commonwealth paid the claims made by subrogor KM under these policies of title insurance. Plaintiff Commonwealth paid pursuant to those policies the following amounts: $68,672.00 for Lot 7; $69,039.00 for Lot 8; and $69,051.09 for Lot 9, for a total amount of **$206,762.09**. Plaintiff Commonwealth, by its payments to subrogor KM on these claims, is now subrogated to collect these sums from any and all Defendants as alleged for those actions which led to Commonwealth's payments under those policies.

### EIGTH CAUSE OF ACTION
### UNJUST ENRICHMENT AGAINST DEFENDANT KEITH C. KLAHR

52. Subrogor KM provided a benefit to Defendant Klahr in the form of construction loan monies. These monies paid by subrogor KM were insured by the above policies of title insurance issued by Plaintiff Commonwealth.

53. Defendant Klahr accepted the benefit of the construction loan monies.

54. Because of the NMID irrigation easement, the construction of residences on the above parcels is not possible.

55. Defendant Klahr is still in possession of the monies paid by subrogor KM despite not using those monies for construction purposes.

56. Under the circumstances, it would be unjust for Defendant Klahr to retain the benefit of these construction loan monies without compensating subrogor KM.

57. Plaintiff Commonwealth provided insurance coverage to subrogor KM under the above policies of title insurance for those monies retained by Defendant Klahr. Plaintiff

Commonwealth paid pursuant to those policies the following amounts: $68,672.00 for Lot 7; $69,039.00 for Lot 8; and $69,051.09 for Lot 9, for a total amount of **$206,762.09**. Plaintiff Commonwealth, by its payments to subrogor KM on these claims, is now subrogated to collect these sums from any and all Defendants as alleged for those actions which led to Commonwealth's payments under those policies.

**WHEREFORE**, Plaintiff Commonwealth Land Title Insurance Company prays for judgment against Defendants as follows:

1. For damages in the amount of $206,762.09, the amount paid by Plaintiff Commonwealth for those claims made by subrogor KM Construction Lending, LLC under the above policies of title insurance against Defendants Jon Nishikawa, Cameron Baldwin, Idaho Appraisal Company, Keith C. Klahr, and TitleOne Corporation, and that these Defendants be held jointly and severally liable for these damages;

2. For interest on said amount from November 18, 2008;

3. For reasonable attorneys fees in the amount of $5,000.00 if this matter is taken by default or in such greater amount as is established by the evidence if this matter is contested;

4. For reasonable costs incurred by Plaintiff in this matter; and

5. For such other and further relief as this Court deems just and proper in the premises.

DATED this 23rd day of October 2009.

THE HOPP LAW FIRM, LLC

_Michael A. Pope_
Michael A. Pope
Attorneys for Plaintiff Commonwealth Land Title Insurance Company